IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS FRANKLIN, | CASE NO. 1:21-cv-814 |
| Petitioner, | DISTRICT JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| WARDEN LASHANN EPPINGER,[1] | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | REPORT & RECOMMENDATION |

Pro se Petitioner Nicholas Franklin filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Franklin is in custody at the Southern Ohio Correctional Facility due to a journal entry of sentence in the case *State v. Franklin*, Cuyahoga County Court of Common Pleas, Case No. CR-17-622587-C. This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

---

[1]    When Franklin filed his Petition, he was housed at the Trumbull Correctional Institution and named Warden LaShann Eppinger as the Respondent. After he filed his Petition, Franklin was moved to the Southern Ohio Correctional Facility. Doc. 9. According to the Ohio Department of Corrections and Rehabilitations' website, Cynthia Davis is currently the Warden of the Southern Ohio Correctional Institution. *See* https://drc.ohio.gov/about/facilities/southern-ohio-correctional-facility/southern-ohio-correctional (last visited May 5, 2023).

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts underlying Franklin's conviction as follows:

> {¶3} In November 2017, Nicholas and his codefendants, Holley Hentges and Malicke Franklin, were named in an eight-count indictment, charging them each with aggravated murder in violation of R.C. 2903.01(A); aggravated murder in violation of R.C. 2903.01(B); murder in violation of R.C. 2903.02(B); three counts of aggravated burglary in violation 2911.11(A)(1); felonious assault in violation of R.C. 2903.11(A)(1); and kidnapping in violation of R.C. 2905.01(A)(3). The indictment stemmed from the aggravated burglary of victims, R.H. and T.L., and the death of victim, C.F., who was killed during the defendants' commission of an aggravated burglary.
>
> {¶4} In June 2018, Nicholas entered into a plea agreement with the state. Following an extensive Crim.R. 11 colloquy, Nicholas pleaded guilty to involuntary manslaughter in violation of R.C. 2903.04(A), as amended in Count 1; and aggravated burglary in violation of R.C. 2911.11(A)(1), as amended in Count 4. The remaining counts were nolled. The trial court accepted Nicholas's guilty plea, referred Nicholas to the probation department for a presentence investigation report, and set the matter for sentencing.

{¶5} Nicholas's sentencing hearing was held in July 2018. During the hearing, defense counsel asked the trial court to consider relevant mitigating factors, including Nicholas's lack of a felony record, his sincere remorse, and the scope of his involvement in the underlying criminal incident. Counsel described Nicholas as a "minor participant" in the aggravated burglary that resulted in C.F.'s "unintended" death. Counsel asserted that no weapons were utilized during the incident and that Nicholas only got involved in the altercation with C.F. because of his mother, codefendant Hentges, and the influence she has on Nicholas. For these reasons, counsel suggested that a three-year prison sentence was appropriate.

{¶6} Nicholas also addressed the court. He accepted responsibility for his actions and apologized to the victim's family.

{¶7} The trial court then heard from the state and family members of C.F. Relevant to this appeal, the state disputed defense counsel's interpretation of Nicholas's involvement in C.F.'s death. The state indicated that the three defendants entered the victim's home without his consent and with the intent "to invoke serious physical harm that led to [C.F.'s] death." Regarding Nicholas, the state informed the court that "witnesses saw him punching and striking [C.F.] down in the lower area of his abdomen where two broken ribs were—his ninth and tenth rib[s] were broken." The state explained that this was significant because "that's what ruptured the spleen that led to [C.F.] internally bleeding." Thus, the state opined that Nicholas "basically did one of the death shots." Finally, the state dismissed defense counsel's reference to Hentges's influence over Nicholas, stating "[Nicholas], who was an adult, could have told his mother no. * * * [The defendants] went over there in agreed force and placed force on [the victims]."

3

{¶8} Upon consideration, the trial court sentenced Nicholas to nine years in prison on each count, to run consecutively, for an aggregate prison term of 18 years.

*State v. Franklin*, No. 107454, 2019 WL 4509767, at *1–2 (Ohio Ct. App. Sept. 19, 2019) (footnote omitted).

## Procedural background

### 1.  *Trial court proceedings*

In November 2017, the Cuyahoga County Grand Jury issued an indictment charging Franklin, Holly Hentges, and Malicke Franklin with two counts of aggravated murder, one count of murder, three counts of aggravated burglary, one count of felonious assault, and one count of kidnapping. Doc. 5-1, at 3–6 (Exhibit 1). Franklin, through counsel, pleaded not guilty. *Id*. at 7 (Exhibit 2).

Later, under a plea agreement, Franklin withdrew his not-guilty plea and pleaded guilty to a reduced charge of involuntary manslaughter and one amended count of aggravated burglary. Doc. 5-1, at 9 (Exhibit 3). The remaining counts were nolled. *Id*. In July 2018, the trial court sentenced Franklin to nine years in prison on each count, to run consecutively, for a total of 18 years in prison. *Id*. (Exhibit 4).

### 2.  *Direct appeal*

Franklin, through new counsel, appealed to the Ohio court of appeals. Doc. 5-1, at 11 (Exhibit 5). In his brief, he argued that the "trial court erred in

4

imposing consecutive sentences." *Id*. at 26. In September 2019, the Ohio court
of appeals affirmed the trial court's judgment. *Id*. at 45–57 (Exhibit 8).

In December 2019, Franklin, pro se, filed in the Ohio Supreme Court an
untimely notice of appeal and a motion for leave to file delayed appeal. Doc. 5-
1, at 58, 60 (Exhibits 9, 10). The Ohio Supreme Court granted Franklin's
motion to file a delayed appeal. *Id*. at 79 (Exhibit 11).

In his memorandum in support of jurisdiction, Franklin set forth the
following proposition of law:

> The consecutive sentences imposed by the trial court
> are contrary to law, in violation of his Due Process
> protections under the Fifth and Fourteenth
> Amendments to the U.S. Constitution and Article I,
> Section §10 of the Ohio Constitution, where the
> court failed to make all of the required findings
> under R.C. 2929.14(C)(4), and the findings made
> were not supported by the record.

Doc. 5-1, at 81 (Exhibit 12). In April 2020, the Ohio Supreme Court declined
under its rule of practice 7.08(B)(4) to accept jurisdiction of Franklin's appeal.
*Id*. at 92 (Exhibit 14).

### 3.    *Ohio Appellate Rule 26(B) Application to reopen*

Meanwhile, in December 2019, Franklin filed in the Ohio court of
appeals an application under Ohio Appellate Rule 26(B) to reopen his direct
appeal. Doc. 5-1, at 93 (Exhibit 15). In his application, Franklin argued that

appellate counsel provided ineffective assistance for not raising the following assignments of error on appeal:

> 1. Franklin should be provided specific performance of the terms of his plea agreement.
>
> 2. Counts 1 and 4 should be merged as allied offenses.
>
> 3. Failure to challenge on appeal the near-maximum sentences imposed by the trial court.

Doc. 5-1, at 94, 96, 99. In April 2020, the Ohio court of appeals denied Franklin's application. *Id*. at 112–21 (Exhibit 17). The court rejected all three of Franklin's assignments of error on the merits and Franklin's third assignment of error as barred by the doctrine of res judicata. *Id*.

Franklin didn't appeal to the Ohio Supreme Court.

*4.*     *Federal habeas corpus petition*

On April 7, 2021, Franklin filed a federal habeas corpus petition under 28 U.S.C. § 2254.[2] Doc. 1. He raised the following grounds for relief:

> **Ground One**: The consecutive sentences imposed by the trial court pursuant to O.R.C. § 2929.14(C)(4) violated Petitioner's Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution.
>
> *Supporting facts*: Petitioner pleaded guilty to one count of involuntary manslaughter in violation of O.R.C. § 2903.04(A) and one count of aggravated burglary in violation of O.R.C. § 2911.(A)(1). The

---

[2]     A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988). Franklin states that he placed his Petition in the prison mailing system on April 7, 2021. Doc. 1, at 12.

offenses stemmed from an incident where Petitioner, at the behest of his mother/co-defendant, Holley Hentges, along with his younger brother/co-defendant, Malicke Franklin, went to the abode of the victim, Charles Foster (who had previously had some type of physical encounter with Hentges). Once there, Petitioner, Hentges, and Malicke proceeded to physically assault Foster. According to eyewitnesses, Petitioner's involvement entailed him punching and striking Foster in the lower abdomen with his bare hands—no weapon or physical object was involved. Foster died as a result of the injuries suffered from the assault by the three individuals. Petitioner was 21 years old at the time, with no prior criminal history. The trial court sentenced Petitioner to 9 years on both counts and ordered the sentences to be served consecutively for an aggregate sentence of 18 years.[3]

**Ground Two**: Petitioner did not receive the specific performance set forth in the terms of his plea agreement, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution.

*Supporting facts*: Petitioner was originally indicted for three counts (Counts 4, 5, and 6) of aggravated burglary under O.R.C. § 2911.11(A)(1). Count 4 listed Charles Foster as the victim; Count 5 listed Ruth Kraushaar as the victim; Count 6 listed Tina Lowe as the victim. Both Kraushaar and Lowe were present when Petitioner and his two co-defendants (see Ground One) assaulted Foster, but neither of them were assaulted, threaten, or caused physically harmed. As part of the plea agreement entered into by Petitioner, Count 4 was amended to add the names of Kraushaar and Lowe and Count 5 and 6 were dismissed. At sentencing, the trial court used the fact that Kraushaar and Lowe were now listed as victims in the amended Count 4 to find that Count 4 was not an allied offense to Count 1 and

---

[3]     Franklin's grounds for relief and supporting facts are reproduced as written and have not been edited.

sentenced Petitioner to separate prison terms of 9 years on each count. The court then ordered the two sentences to be served consecutively for an aggregate prison term of 18 years.

**Ground Three**: The trial court violated Petitioner's Double Jeopardy protections, as set forth in the Fifth Amendment to the U.S. Constitution, when it failed to merge Counts 1 and 4 as allied offenses, but instead imposed separate 9 year sentences.

*Supporting facts*: In his plea agreement, Petitioner agreed to plead guilty to Count 1, amended to involuntary manslaughter in violation of O.R.C. § 2903.04(A) … and Count 2, aggravated burglary in violation of O.R.C. § 2911.11(A)(1) …. Count 4 was amended to add the names of Ruth Kraushaar and Tina Lowe as victims (see Count Two). While Petitioner admitted to assaulting Foster, there was never any allegation, evidence or testimony that he had harmed, attempted to harm or threatened to harm either Kraushaar or Lowe. The trial court sentenced Petitioner separately to 9 years each on both Counts 1 and 4 and ordered them served consecutively.

**Ground Four**: Petitioner's 18-year aggregate sentence violated his protection against cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.

*Supporting facts*: Petitioner was 21 years old and without any prior criminal history when, at the behest of this mother/co-defendant Holly Hentges, and accompanied by his younger brother/co-defendant Malicke Franklin, entered the abode of the victim, Charles Foster, and physically assaulted him. Although Foster died as a cumulative result of the assault by the three family members, there is no evidence that it was the intent to cause his death. Petitioner pleaded guilty to one count each of involuntary manslaughter and aggravated burglary, both first degree felonies in the State of Ohio. Pursuant to O.R.C § 2929.14(A)(1)(a), as it existed at

the time of Petitioner's sentencing, the trial court had the discretion to impose a prison term on each count of 3, 4, 5, 6, 7, 8, 9, 10 or 11 years. The trial court chose to impose a near-maximum sentence of 9 years on each count and then ordered them to be served consecutively under O.R.C. § 2929.14(C)(4), for an aggregate sentence of 18 years. The absolute maximum prison term he could have received was 22 years.

Doc. 1, at 4–9. The Warden filed a Return of Writ, Doc. 5, and Franklin filed a Traverse, Doc. 8.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

1.    *Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See, e.g., Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

2.    *Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state

10

procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v.*

11

*Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

      3.   *Merits review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from

th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*,

562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1.     A portion of Ground one is not cognizable and the remainder fails on the merits*

In Ground one, Franklin argues that the trial court violated his due process rights when it imposed consecutive sentences per Ohio Revised Code § 2929.14(C)(4). Doc. 1, at 4. Franklin points out that he pleaded guilty to one count of involuntary manslaughter and one count of aggravated burglary stemming from the same incident—Franklin, his mother, and his brother entered Foster's home and beat Foster to death in front of two other occupants of the home. *Id*. at 4–5. Franklin states that he used his hands to beat Foster, not a weapon, and that he had no prior criminal history. *Id*. at 5. He identifies Ground One as the ground he raised to the Ohio court of appeals on direct appeal. *Id*.

In his Traverse, Franklin spends 10 pages discussing Ground One. Doc. 8, at 8–18. But in those pages, Franklin raises issues that he didn't raise to the Ohio court of appeals on direct appeal. To the Ohio court of appeals, Franklin cited the state sentencing statute, Ohio Revised Code § 2929.14(C)(4), and Ohio

14

cases. Doc. 5-1, 31–32. Franklin argued that his role in beating Foster to death was "minimal" and that he "never would have thought" that it "would cause a man's spleen to rupture and for him to bleed to his death." *Id.* at 33. Franklin also cited his lack of a criminal record, the fact that he did not use a weapon, and his remorse. *Id.* Franklin concluded, "[t]here was nothing put on the record, no facts at all, that would make … Franklin deserving of a[n 18-year sentence]." *Id.* The Ohio court of appeals characterized Franklin's claim as asserting that the record didn't support the trial court's Ohio Revised Code § 2929.14(C)(4) sentencing findings. *See Franklin*, No. 107454, 2019 WL 4509767, at *3 ("On appeal, Nicholas does not argue that the trial court failed to make the requisite consecutive sentencing findings under R.C. 2929.14(C)(4). Rather, Nicholas contends that the record does not support the trial court's findings.").

So many of the arguments Franklin makes in support of Ground One in his Traverse, in which he describes different legal theories than the one theory he raised on direct appeal, are not properly made in support of Ground One. Instead, those theories—double jeopardy under the Fifth Amendment, cruel and unusual punishment under the Eighth Amendment, and challenges to Franklin's guilty plea, Doc. 8, at 9–10, 12–13, 14–15—are consistent with Franklin's three other grounds for relief in his Petition. Doc. 1, at 6–9. So I will consider those issues when I discuss Grounds Two, Three, and Four.

15

That leaves Franklin argument that the trial court's findings were not supported by the record. Franklin challenges the trial court's reliance upon Ohio Revised Code § 2929.14(C)(4). *See* Doc. 1, at 4; Doc. 8, at 8, 10–13, 15–18. A claim that the trial court violated a state sentencing law is a state-law issue that is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (an alleged violation of state sentencing laws is not cognizable on federal habeas review) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). A claim alleging a violation of Ohio Revised Code 2929.14(C)(4) is not cognizable. *See, e.g., Thompson v. Bracy*, No. 1:19-cv-58, 2022 WL 676288, at *23 (N.D. Ohio Jan. 14, 2022)[4] (claim that the trial court failed to make findings under Ohio Revised Code § 2929.14(C)(4) before imposing consecutive sentences rests on state law and is not cognizable). So to the extent Franklin is challenging Ohio sentencing laws, *see, e.g.*, Doc. 8, at 16–17, his claim is not cognizable.

A claim alleging a constitutional violation due to consecutive sentences may be cognizable if the petitioner shows that the sentence exceeds the statutory range. *See, e.g., Croce v. Miller*, No. 1:15-cv-1758, 2017 WL 3394046,

---

[4] Report and recommendation adopted, 2022 WL 911260 (N.D. Ohio Mar. 29, 2022).

at \*22 (N.D. Ohio July 12, 2017) (collecting cases).[5] But Franklin concedes that the trial court sentenced him to less than the maximum penalty under the statute. Doc. 8, at 8, 13.

A sentence may also violate federal due process "if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct." *Teneyuque v. Palmer*, No. 2:17-cv-13833, 2020 WL 1888828, at \*9 (E.D. Mich. Apr. 16, 2020) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948)); *see Stewart v. Erwin*, 503 F.3d 488, 495 (6th Cir. 2007). But Franklin doesn't identify materially false information that the trial court purportedly relied on. Nor does he allege that he lacked an opportunity to correct allegedly false information. Instead, Franklin disagrees with the trial court's findings. Doc. 8, at 14–16. For instance, Franklin contends that the harm he inflicted on Foster, whom he beat to death, was more severe than the harm he inflicted on the two other victims—occupants of the home, including Foster's fiancée—who witnessed Franklin beating Foster to death. And so, Franklin argues, the trial court shouldn't have sentence him to a nine-year, consecutive sentence for aggravated burglary. Doc. 8, at 14–15. But that argument doesn't identify a "carelessly or deliberately pronounced [sentence]" that the trial court based "on an extensive and materially false foundation which [Franklin] had no opportunity to correct." *Teneyuque*, No.

---

[5]    Report and recommendation adopted, 2017 WL 3382665 (N.D. Ohio Aug. 7, 2017).

2:17-cv-13833, 2020 WL 1888828, at *9; *c.f. Townsend*, 334 U.S. at 740 (finding a due process violation when, at sentencing, the trial court recited Townsend's criminal history, including three charges of which he was not found guilty, and Townsend, who was unrepresented had no counsel who could set his criminal history record straight).

Here, as the Ohio court of appeals explained,

> {¶16} After careful review of the record in its entirety, we find no basis to conclude that the record does not support the court's findings under R.C. 2929.14(C)(4). In this case, the trial court carefully considered Nicholas's familial relationship with the victims, discussed the great harm caused by the multiple offenses, weighed the need to protect the public, and evaluated the proportionality of the punishment to Nicholas's conduct. The trial court described the crimes committed by Nicholas as "extremely violent" and discussed the ongoing trauma caused to C.F.'s family. The court further rejected defense counsel's characterization of Nicholas's involvement in the crimes as being "minimal," stating:
>
> > A man [was] beaten to death by three people in front of his fiancée and the other occupants of the home. * * * [The] three of you did it together, you're all equally responsible and that's the way the Court sees it.
>
> {¶17} On this record, Nicholas has not demonstrated that the trial court's findings relied on facts that were demonstrably wrong. *See State v. Perkins*, 8th Dist. Cuyahoga Nos. 106877 and 107155, 2019-Ohio-88, ¶ 18; *State v. Williams*, 8th Dist. Cuyahoga No. 100488, 2014-Ohio-3138, ¶ 13. Instead, Nicholas merely reiterates the mitigation arguments that were previously raised before the court during the sentencing hearing. Thus, Nicholas's position seems

18

to suggest that the trial court abused its discretion by not giving enough weight to the relevant factors he believes weigh heavily in favor of concurrent sentences. However, R.C. 2953.08(G)(2) makes clear that our standard of review is not whether the sentencing court abused its discretion. *See Perkins* at ¶ 17.

{¶18} We note that Nicholas's lack of a criminal history did not render the imposition of consecutive sentences to be inappropriate in this case. As this court has previously explained, even where a defendant has no criminal history, consecutive sentences may be imposed if the court makes one of the alternative findings under R.C. 2929.14(C)(4)(a) or (b). *State v. Nave*, 8th Dist. Cuyahoga No. 107032, 2019-Ohio-348, ¶ 7. Here, the court found R.C. 2929.14(C)(4)(b) applied, stating that Nicholas's commission of the involuntary manslaughter and aggravated burglary offenses caused harm that "is so great or unusual that a single term is not adequate to reflect the seriousness of the conduct." As stated, it cannot be concluded that the record clearly and convincingly does not support this finding given the circumstances of C.F.'s death.

{¶19} The record further reflects that the trial court considered Nicholas's claims of remorse under R.C. 2929.12 when imposing a term of imprisonment on each first-degree felony offense. At the sentencing hearing and again in the final entry of conviction, the trial court expressly stated that it considered all sentencing factors as required by law, including the recidivism factors that were offered by defense counsel for consideration. Thus, while Nicholas disagrees with the trial court's decision to exercise its discretion to impose consecutive sentences, we find the trial court fulfilled each of its obligations under the applicable sentencing statutes.

{¶20} Based on the foregoing, we cannot clearly and convincingly find that the record fails to support the trial court's findings under R.C. 2929.14(C)(4). In addition, the record reflects that the trial court's

> findings were properly incorporated into the
> sentencing journal entries as required under [*State
> v.] Bonnell* [, 16 N.E.3d 659 (Ohio 2014)].

*Franklin*, No. 107454, 2019 WL 4509767, at *3–4.

Franklin objects to the Ohio court of appeals' reference to the trial court discussing the "ongoing trauma" experienced by the victim's family. Doc. 8, at 16. Franklin contends that "ongoing trauma" is not one of the factors the trial court should have used under Ohio's sentencing statute. Doc. 8, at 16. But that is a challenge to the trial court's adherence to the state sentencing statute, not a federal constitutional issue. Moreover, the trial court's comments—the court acknowledged the victim's family's pain and wished them well, Doc. 6-1, at 43—didn't serve as "an extensive and materially false foundation" that the trial court relied on when sentencing Franklin. *See Teneyuque*, No. 2:17-cv-13833, 2020 WL 1888828, at *9. In short, Franklin doesn't allege facts that amount to a due process violation and he doesn't show that that the Ohio court of appeals' decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(d)(2). So the portion of Ground One that alleges a due process violation fails on the merits.

### 2. *Grounds Two, Three, and Four are procedurally defaulted*

In Ground Two, Franklin argues that he didn't "receive the specific performance set forth in the terms of his plea agreement." Doc. 1, at 6. In Ground Three, Franklin argues that his double jeopardy rights were violated

when the trial court failed to merge two counts before sentencing. *Id*. at 7. And in Ground Four, Franklin alleges that his 18-year sentence violated his right to be free from cruel and unusual punishment under the Eighth Amendment. *Id*. at 9. All of those grounds are procedurally defaulted because they are based on the state court record and Franklin should have, but didn't, raise them on direct appeal. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)).

For cause to excuse his procedural default of Grounds Two, Three, and Four, Franklin argues that his appellate counsel was ineffective for not raising those claims on direct appeal. Doc. 8, at 5–6. Ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000). Here, Franklin procedurally defaulted any ineffective assistance of appellate counsel claim. Although Franklin filed a Rule 26(B) Application to reopen alleging that appellate counsel was ineffective for not raising on direct appeal the claims in Grounds Two, Three, and Four, the Ohio court of appeals denied Franklin's application and Franklin didn't appeal that ruling to the Ohio Supreme Court. *See Williams*, 460 F.3d at 806 (a petitioner procedurally defaults a claim by failing to raise it throughout the state's ordinary appellate review procedure).

21

For cause to excuse *that* procedural default, Franklin alleges that he was unable to appeal to the Ohio Supreme Court because, on March 9, 2020, Governor Mike DeWine declared a state of emergency in Ohio. Doc. 8, at 6. As a result, the prison library closed. *Id*. And because the Ohio court of appeals denied Franklin's Rule 26(B) Application on April 22, 2022, Franklin asserts, he had "no way of formulating a notice of appeal and memorandum in support of jurisdiction that would have met the rigid requirements of" the Ohio Supreme Court Rules of Practice. *Id*. Franklin doesn't say when the prison library reopened.

While true that Ohio Governor Mike DeWine declared a state of emergency due to the coronavirus pandemic effective March 9, 2020, *see, e.g. Pickens v. Shoop*, No. 1:19-cv-558, 2020 WL 3128536, at *1 (S.D. Ohio June 12, 2020), it is also true that, in conjunction with that Order, the time requirements for appealing to the Ohio Supreme Court were tolled until July 30, 2020, *see In re Tolling of Time Requirements Imposed by Rules Promulgated by Supreme Ct. & Use of Tech.*, 158 Ohio St. 3d 1447, § (A)(1)(l) (Ohio 2020). Franklin doesn't explain why he couldn't later file an appeal to the Ohio Supreme Court, given the operation of the tolling order. Also, his assertion that the Ohio Supreme Court's appellate requirements are "rigid" rings hollow. Doc. 8, at 6. This is so because Franklin previously sought in the Ohio Supreme Court leave to file a late appeal and the Ohio Supreme Court granted it. *See* Doc 5-1, at 60, 79. Franklin hasn't shown cause to excuse the procedural

22

default of his ineffective assistance of appellate counsel claim, and therefore can't show cause to excuse the procedural default of Grounds Two, Three, and Four.

Finally, Franklin doesn't allege that he is innocent of the crimes he pleaded guilty to. So he can't overcome the procedural bar by showing that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## Conclusion

For the reasons set forth above, I recommend that Franklin's Petition be denied.

Dated: May 8, 2023

                   */s/ James E. Grimes Jr.*
                   James E. Grimes Jr.
                   U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).